## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | §<br>§<br>§ | |
| **V.** | §<br>§<br>§ | **NO. 1:21-CR-0313-TJK-01** |
| **ANDREW JACKSON MORGAN, JR.** | §<br>§<br>§ | |

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant ANDREW JACKSON MORGAN, JR., ("Mr. Morgan"), hereby moves to dismiss Count One of the Indictment. In support of his Motion, he sets forth the following:

## I.    INTRODUCTION

On April 21, 2021, the grand jury returned an Indictment, which charges Mr. Morgan with obstruction of an official proceeding, entering and remaining in a restricted building, and two counts of disorderly conduct. *See* Doc. No. 9. The charges relate to Mr. Morgan's alleged involvement in the events at the U.S. Capitol building on January 6, 2021. Count One specifically charges that, pursuant to 18 U.S.C. § 1512(c)(2) and 2:

> On or about January 6, 2021, within the District of Columbia, ANDREW JACKSON MORGAN, JR., attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is a proceeding before Congress, by entering and remaining on and in the United States Capitol without authority and committing an act of civil disorder, and engaging in disorderly and disruptive conduct.

*See* Doc. No. 9 at 1. Mr. Morgan respectfully argues that his alleged conduct does not constitute a violation of § 1512(c)(2) as a matter of law.

## II.    LEGAL ARGUMENT

A defendant may move to dismiss an indictment on the grounds that it fails to state an offense. FED. R. CRIM. P. 12(b)(3)(B). This ground for dismissal includes a claim that a statute

named in the indictment does not proscribe the alleged conduct. *See United States v. Payne*, 382 F.Supp.3d 71, 73–74 (D.D.C. 2019). In assessing the propriety of dismissal, the Court is "limited to review[ of] the face of the indictment and, more specifically, the language used to charge the crimes." *Id.* at 73-74.   The Court must accept the allegations in the indictment are true.   *Id.* The "'operative question' is whether these allegations, if proven, are 'sufficient to permit a jury to find that the crimes charged were committed.'" *Id.* (quoting *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012)).

Mr. Morgan respectfully argues that Count One of the Indictment should be dismissed for failure to state an offense for the following reasons: (1) Section 1512(c)(2) only applies to conduct involving "records, documents, or other objects;" (2) certification of the Electoral College vote does not qualify as an "official proceeding"; and (3) "corruptly," as used in § 1512(c)(2), is void for vagueness.

Statutory interpretation begins with the text of the statute. *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014).   The initial step is " to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).   "In determining the 'plainness or ambiguity of statutory language' [a court] refer[s] to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *United States v. Wilson*, 290 F.3d 347, 353 (D.C. Cir. 2002) (quoting *Robinson*, 519 U.S. at 341)).   When the meaning of a statute is ambiguous, a court looks to the statutory purpose. *United States v. Braxtonbrown–Smith*, 278 F.3d 1348, 1352 (D.C.Cir.2002) ("Where the language is subject to more than one interpretation and the meaning of Congress is not apparent from the language itself, the court may be forced to look to the general purpose of Congress in enacting the statute and to its legislative history for helpful

clues.").

When interpreting criminal statutes, federal courts "traditionally exercise[] restraint in assessing the[ir] reach." *United States v. Aguilar*, 515 U.S. 593, 600 (1995). Such restraint is necessary "both out of deference to the prerogatives of Congress and out of concern that 'a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.'" *Id.* at 600 (citations omitted); *cf. Sessions v. Dimaya*, 138 S. Ct. 1204, 1223–28 (2018) (Gorsuch, J., concurring in part and concurring in judgment). This "prudent rule of construction" continues with force today. *Dowling v. United States*, 473 U.S. 207, 214 (1985); *see Marinello v. United States*, 138 S. Ct. 1101, 1108 (2018) (endorsing the rule).

Further cautioning restraint is the rule of lenity. In matters of interpretation, any "ambiguity" as to the meaning of terms in a statute must be construed against the Government and in favor of a defendant. *See, e.g., United States v. Cook*, 594 F.3d 883, 890 (D.C. Cir.)*, cert. denied,* 560 U.S. 947 (2010).

## A. Section 1512(c)(2) only applies to conduct involving a "record, document, or other object."

This Court is respectfully asked to consider that § 1512(c)(2), when considered under an appropriate application of traditional tools of statutory interpretation—text, structure, and the development of the statute over time— is narrow in scope. As such, it may not be read to encompass the alleged conduct. This Court thus should "exercise[ ] restraint in assessing the reach of a federal criminal statute," *Aguilar*, 515 U.S. at 600, and "resolve ambiguities in favor of the defendant," *Nasir*, 17 F.4th at 473 (Bibas, J., concurring) (citing *Liparota*, 471 U.S. at 427). At least one court in this district has dismissed a § 1512(c)(2) count in a case arising from the events on January 6, 2021, holding that § 1512(c)(2) is limited by the language of 1512(c)(1), and only

applies if the defendant has "taken some action with respect to a document, record, or other object in order to corruptly obstruct, impede or influence an official proceeding." *See United States v. Miller*, No. 1:21-CR-00119 (CJN), 2022 WL 823070, at *15 (D.D.C. Mar. 7, 2022); *but see United States v. Puma*, No. CR 21-0454 (PLF), 2022 WL 823079, at *12 n.4 (D.D.C. Mar. 19, 2022) (disagreeing with the analysis in *Miller*).

The prohibitions of § 1512(c) apply to

> **(c)** Whoever corruptly—
>
> > **(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with intent to impair the object's integrity or availability for use in an official proceeding; or
> >
> > **(2)** *otherwise* obstructs, influences, or impedes any official proceeding, or attempts to do so . . . .

18 U.S.C. § 1512(c). Mr. Morgan is charged with violating only subsection (2).

If one were to read subsection (c)(2) in isolation, then the strangely worded offense becomes "whoever corruptly . . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so." The curious structure suggests § 1512(c)(2) was not intended to be read apart from subsection (c)(1), but rather subsection (c)(2) was intended to serve as a residual clause to prohibitions defined by subsection (c)(1).

The term 'otherwise' represents the linchpin between a reasonable interpretation and absurdity. In plain English, "otherwise" is defined as "in a different way or manner: differently"; "in different circumstances: under other conditions"; and "in other respects." *Otherwise*, *Webster's Third New Int'l Dictionary of the English Language Unabridged* (2002). If subsection(c)(2) were to be read as an untethered offense, then the term "otherwise," implying a relationship to another object, modifies nothing. Further countenancing against such an approach, by reading

(c)(2) divorced from (c)(1) "otherwise" becomes meaningless surplusage. *Setser v. United States*, 566 U.S. 231, 239 (2012) (all words in a statute must be given effect when possible).

More significantly, such a reading would be inconsistent with the approach set forth in *Begay v. United States*, 553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015). In *Begay*, the Supreme Court assessed whether drunk driving was a "violent felony" under the Armed Career Criminal Act. The ACCA defined a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that "is burglary, arson, or extortion, involves use of explosives, or *otherwise* involves conduct that presents a risk of physical injury to another." *Begay*, 553 U.S. at 139–40 (quoting 18 U.S.C. § 924(e)(2)(B)(ii) (2000)) (emphasis added). The term 'otherwise' was central to the analysis.

The majority concluded that the ACCA's use of the word "otherwise" tethered the clause preceding the word to the clause following it. In so doing, the majority concluded that the clause preceding "otherwise" "limit[ed] the scope of the clause to crimes that are *similar to the examples themselves*." *Begay*, 553 U.S. at 143 (emphasis added). The Supreme Court then held that "driving under the influence" fell outside of the ACCA's "violent felony" definition because it was not like burglary, arson, or extortion. *Id.* at 142.

An obvious and coherent solution to these concerns is to read subsection (c)(2) as a residual clause for subsection (c)(1). Under this reading, the word "otherwise" joins the two subsections. The link is found in the conduct prescribed by subsection (c)(1). This interpretation is consistent with *Begay*. In particular, the *Begay* majority opinion rejected the government's argument "that the word 'otherwise' is *sufficient* to demonstrate that the examples [preceding 'otherwise'] do not limit the scope of the clause [following 'otherwise']." *Begay*, 553 U.S. at 144 (emphasis in original).

Moreover, the Court *held* that "the provision's listed examples"—that is, the text before "otherwise"—". . . indicate[ ] that the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious potential risk of physical injury to another.'" *Id.* at 142 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)) (emphasis in original).  Justice Scalia, in his concurrence, confirms that the majority "read[s] the residual clause to mean that the unenumerated offenses must be similar to the enumerated offenses not only in the degree of risk they pose, but also 'in kind,' despite the fact that 'otherwise' means that the *common* element of risk must be presented 'in a *different* way or manner.'" *Id.* at 151 (Scalia, J., concurring) (emphasis in original).

Under this interpretation, subsection (c)(2) operates to ensure that by delineating only certain specific unlawful acts in subsection (c)(1)—"alter[ation], destr[uction], mutilat[ion], or conceal[ment]"—Congress was not underinclusive.  Compare, for example, § 1519.  That statute targets anyone who "alters, destroys, mutilates, conceals, *covers up, falsifies, or makes a false entry in* any record, document, or tangible object" for certain purposes in the context of department or agency investigations.  18 U.S.C. § 1519 (emphasis added).  The highlighted acts are additional ways in which an individual can corruptly act on a "record, document, or tangible object" that are not covered by subsection (c)(1) but would be covered, on this reading, by subsection (c)(2).

This interpretation further comports with a structure and scope of § 1512 suggesting subsection (c)(2) has a narrow focus.  While not dispositive of the scope of subsection (c), section 1512 is entitled "Tampering with a witness, victim, or an informant," which captures the narrow, evidentiary focus of the rest of the statute.  *See I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189 (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.").

A narrow reading of § 1512(c)(2) further comports with other subsections of § 1512 similarly proscribing discrete conduct. Subsection (a) criminalizes, among other things, killing another person to prevent the attendance of a person at an official proceeding, 18 U.S.C. § 1512(a)(1)(A), or using physical force (or a threat of it) against a person with the intent to cause someone to withhold testimony from an official proceeding, *id.* § 1512(a)(2)(B)(i). Subsection (b), in turn, focuses on verbal conduct, such as knowingly using threats with intent to influence, delay, or prevent some testimony at an official proceeding. *Id.* § 1512(b)(1). And subsection (d) criminalizes the intentional harassment of a person and thereby hindering, delaying, preventing, or dissuading any person from attending or testifying in an official proceeding. *Id.* § 1512(d)(1). Subsection (c)(1) maintains the statute's prohibitions on specific and particularized actions but shifts emphasis from indirect actions against another to direct actions. It prohibits "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object, or attempt[ing] to do so, with intent to impair the object's integrity or availability for use in an official proceeding." *Id.* § 1512(c)(1). Consistent with the other § 1512 subsections, (c)(1) calls for a narrow, focused range of conduct.

If read in isolation, subsection (c)(1) would represent the only provision in § 1512 lacking a narrow focus. At a minimum, a reader would not expect to find in a statute that is otherwise precisely defined and narrow in scope a subsection of exceptionally broad scope. Such a broad interpretation would further encompass and therefore render surplus conduct made unlawful by at least eleven subsections—§§ 1512(a)(1)(A), 1512(a)(1)(B), 1512(a)(2)(A), 1512(a)(2)(B)(i), 1512(a)(2)(B)(iii), 1512(a)(2)(B)(iv), 1512(b)(1), 1512(b)(2)(A), 1512(b)(2)(C), 1512(b)(2)(D), and 1512(d)(1). While this concern is in no way dispositive, it nonetheless suggests the ill-advised effects of a contrary interpretation of subsection (c)(2).

Finally, the historical development of § 1512 cautions against a broader reading of § 1512(c)(2).  Prior to the enactment of subsection 1512(c) in 2002, § 1512 made criminal only actions directed at other persons.  For example, at that time subsection (b)(2) provided:

> **(b)** Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades *another person*, or attempts to do so, or engages in misleading conduct toward another person, with intent to—
>
> **(2)** cause or induce any person to—
>
> **(A)** withhold testimony, or withhold a record, document, or other object, from an official proceeding;
>
> **(B)** alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;
>
> **(C)** evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or
>
> **(D)** be absent from an official proceeding to which such person has been summoned by legal process; . . .
>
> shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. §§ 1512(b)(1) (1996).  Other subsections similarly prohibited conduct directed at causing or influencing "another person" to take improper action.  *Id.* §§ 1512(a)(1)(A)–(C), 1512(c)(1)-(4).  This created a gap in the statutory scheme:  § 1512 made it unlawful to cause "another person" to take certain steps—such as to "alter, destroy, mutilate, or conceal an object"— but did not make it unlawful for a person to take such action directly.

§ 1512(c) filled that gap and took much of its language from § 1512(b).  Compare the two provisions:

| **(b)** Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to | **(c)** Whoever corruptly—
<br><br>**(1)** *alters, destroys, mutilates, or conceals a record, document, or other object, or* |
|---|---|

do so, or engages in misleading conduct toward another person, with intent to—

**(2)** cause of induce any person to—

    **(A)** withhold testimony, or withhold a record, document, or other object, from an official proceeding;

    **(B)** *alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding*;

    **(C)** evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

    **(D)** be absent from an official proceeding to which such person has been summoned by legal process; . . .

shall be fined under this title or imprisoned not more than ten years, or both.

*attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding*; or

**(2)** otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b)(2) (1996) (left) (emphasis added); 18 U.S.C. § 1512(c) (2002) (right) (emphasis added).  Just three months later, Congress added § 1512(a)(2)(B), which again drew on § 1512(b):

**(b)** Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to—

**(2)** cause or induce any person to—

    **(A)** withhold testimony, or withhold a record, document, or other object, from an official proceeding;

    **(B)** *alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding*;

    **(C)** evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

    **(D)** be absent from an official proceeding to which such person has been summoned by legal process; . . .

shall be fined under this title or imprisoned not more than ten years, or both.

**(a)**

    . . .

**(2)** Whoever uses physical force or the threat of physical force against any person, or attempts to do so, with intent to—

    **(B)** cause or induce any person to—

        **(i)** withhold testimony, or withhold a record, document, or other object, from an official proceeding;

        **(ii)** *alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding*;

        **(iii)** evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

        **(iv)** be absent from an official proceeding to which such person has been summoned by legal process; . . .

shall be punished as provided in paragraph (3).

18 U.S.C. § 1512(b)(2) (1996) (left) (emphasis added); 18 U.S.C. § 1512(a)(2)(B) (2002) (right) (emphasis added).

In adding subsection (c) to fill the gap in § 1512, and in drafting an amendment drawing heavily from one of the four statutory provisions already included in subsection (b), Congress intended subsection (c) to have a narrow, limited focus comparable to (b)(2)(B). The resulting change in subsection (c) simply addressed the need for a prohibition that does not include the requirement of acting through another person.  The conclusion that § 1512(c)(2) was intended to be narrow in scope is further buttressed by the same Congress' adoption of the entirety of § 1512(b)(2) in § 1512(a)(2)(B), rather than selective incorporation of an individual subsection of § 1512(b)(2).  An exceedingly broad reading of § 1512(c)(2) would raise serious questions as to why Congress perceived a need to add § 1512(a)(2)(B) just three months later.

Finally, a review of the legislative history does not justify a reading that 1512(c)(2) was intended to have broad reach in its prohibitions.  § 1512(c) was enacted as part of the Sarbanes-Oxley Act of 2002, 116 Stat. 745.  "The Sarbanes-Oxley Act, all agree, was prompted by the exposure of Enron's massive accounting fraud and revelation that the company's outside auditor, Arthur Andersen LLP, had systematically destroyed potentially incriminating documents." *Yates v. United States*, 574 U.S. 528, 535–36 (2015) (plurality opinion).  While § 1512(b) "made it an offense to 'intimidat[e], threate[n], or corruptly presuad[e] *another person*' to shred documents," the statute did not prohibit individuals from shredding documents themselves. *Id.* at 536 (emphasis added). The Senate Report for the Act identified this statutory loophole:

> Indeed, even in the current Andersen case, prosecutors have been forced to use the "witness tampering" statute, 18 U.S.C. § 1512, and to proceed under the legal fiction that the defendants are being prosecuted for telling other people to shred documents, not simply for destroying evidence themselves. Although prosecutors have been able to bring charges thus far in the case, in a case with a single person doing the shredding, this legal hurdle might present an insurmountable bar to a successful prosecution.

S. Rep. No. 107–146, p. 7 (2002).

As *Yates* explains, 18 U.S.C. § 1519 was originally introduced to address this concern, *Yates*, 574 U.S. at 535–36, and § 1512(c) was added later, *id.* at 542.  Senator Lott introduced § 1512(c) on July 10, 2002.  *See Montgomery*, 2021 WL 6134591, at *15.  He stated that the amendment's "purpose" was "[t]o deter fraud and abuse by corporate executives"—in line with the Enron concern.  148 Cong. Rec. S6542 (daily ed. July 10, 2002).  He later stated that the new subsection "*would enact stronger laws against document shredding*.  Current law prohibits obstruction of justice by a defendant acting alone, but only if a proceeding is pending and a subpoena has been issued for the evidence that has been destroyed or altered.  Timing is very important."  *Id.* at S6545 (emphasis added).  In Senator Lott's view, his amendment would fill this gap: "So this section would allow the Government to charge obstruction *against individuals who acted alone*, even if the tampering took place prior to the issuance of a grand jury subpoena.  I think this is something we need to make clear so we do not have a repeat of what we saw with the Enron matter earlier this year."  *Id.* (emphasis added)  Then-Senator Joseph Biden referred to new subsection (c) as "making it a crime for document shredding," something he thought the pending bill already did.  *Id.* at S6546.

Senator Hatch made similar statements regarding the focus of the proposed new subsection on documents and document-shredding, as well as its ties to the then-recent Enron scandal.  Senator Hatch explained that "the amendment strengthens an existing federal offense that is often used to prosecute document shredding and other forms of obstruction of justice," noting that current law "does not prohibit an act of destruction committed by a defendant acting alone.  While other existing obstruction of justice statutes cover acts of destruction that are committed by an[] individual acting alone, such statutes have been interpreted as applying only where a proceeding is pending, and a subpoena has been issued for the evidence destroyed."  *Id.* at S6550.  To Senator Hatch, the addition

12

of § 1512(c) "closes this loophole by broadening the scope of [§] 1512." *Id.* It "*would permit the government to prosecute an individual who acts alone in destroying evidence, even where the evidence is destroyed prior to the issuance of a grand jury subpoena.*" *Id.* (emphasis added). He concluded by noting that the Arthur Andersen prosecutors "had to prove that a person in the corporation corruptly persuaded *another* to destroy or alter documents, and acted with the intent to obstruct an investigation." *Id.* (emphasis added). The new § 1512(c) would ensure "that individuals acting alone would be liable for such criminal acts." *Id.*

The legislative history thus suggests that, in the wake of the Enron scandal, Congress was presented with a very specific loophole that needed to be addressed by amendment. Congress closed that loop by passing subsection (c). Nothing in the legislative history suggests a broader purpose that might bring the alleged offense conduct within the scope of subsection (c). § 1512(c), accordingly, requires proof that Mr. Morgan committed acts of obstruction tied to tangible evidence; specifically, that he either altered, mutilated, destroyed, or otherwise imparied documents.

There is no allegation suggesting Mr. Morgan altered, mutilated, destroyed, or otherwise impaired documents that might implicate a violation of § 1512(c). Therefore, the Court should find that Count One fails to state an offense, because it does not allege that Mr. Morgan took any action with respect to a document, record, or other object, as a part of his alleged obstructive conduct. *See* FED. R. CRIM. P. 12(b)(3)(B); *Begay*, 553 U.S. at 139-40; *Miller*, 2022 WL 823070, at *15.

**B. Certification of the Electoral College Vote is Not an "Official Proceeding."**

Count One alleges that Mr. Morgan obstructed an "official proceeding," in violation of 18 U.S.C. § 1512(c)(2), and identifies "a proceeding before Congress," as the "official proceeding." *See* Doc. No. 9 at 1. Counsel understands the "proceeding before Congress" to be Congress's

certification of the Electoral College vote.[1] This certification does not constitute an "official proceeding" under 18 U.S.C. § 1512(c)(2).

A review of the text, history, and judicial interpretation of § 1512, especially considering the Supreme Court's long-standing guidance to strictly construe penal statutes, demonstrates that this statute, which punishes obstruction of "official proceedings," does *not* apply to the Electoral College certification.

§ 1515(a)(1) of Title 18 defines an "official proceeding" as

> (A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;
>
> (B) a proceeding before the Congress;
>
> (C) a proceeding before a Federal Government agency which is authorized by law; or
>
> (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce;

*United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013), represents one of the earliest decisions to define "official proceeding" as used in §§ 1512(c) and 1515. In so doing, the

---

[1] Other courts have held that an indictment must specifically identify the "official proceeding" for the purposes of indictments brought under § 1512. *See, e.g., United States v. McGarity*, 669 F.3d 1218, 1238-40 (11th Cir. 2012) (dismissing 1512(c)(2) count where indictment failed to specify any official proceeding); *United States v. Murphy*, 762 F.2d 1151 (1st Cir. 1985) (finding indictment defective for failing to specify any official proceeding in 1512(a)(1) case); *United States v. Peterson*, 544 F. Supp. 2d 1363, 1376-77 (M.D. Ga. 2008) (dismissing count of 1512(c)(2), where indictment only alleged interference with a "federal investigation" and failed to otherwise allege any specific official proceeding that was obstructed); *see also United States v. Shively*, 927 F.2d 804, 810-13 (5th Cir. 1991) (reversing 1512(b)(1) witness intimidation conviction, and noting that the indictment had failed to apprise the defendants of the charges by not specifying the official proceeding). The Indictment in this case is likely deficient for its failure to specific the congressional proceeding. And insofar as the Government would argue that a different "official proceeding" was obstructed, Mr. Morgan offers that it has not been properly alleged.

Ninth Circuit observes "[a]s used in the statute, the definition of the phrase 'official proceeding' depends heavily on the meaning of the word 'proceeding'" and further noted, "[t]hat word is used — somewhat circularly — in each of the definitions for an 'official proceeding' and is key to the phrase's meaning." *Id.* at 1169.

Assessing the plain language of § 1515, the court observed that "[s]everal aspects of the definition for 'official proceeding' suggest that the legal—rather than the lay — understanding of the term 'proceeding' is implicated in the statute." *Id.* at 1170. Continuing the court adds "the descriptor 'official' indicates a sense of formality normally associated with legal proceedings," and not "a mere 'action or series of actions.'" *Id.* (*citing* "Proceeding," Oxford English Dictionary). Moreover, the Court pointed to the fact that "the word 'proceeding' is surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'Federal grand jury,' 'Congress,' and 'Federal Government agency.'" *Id.*

The Ninth Circuit then reviewed § 1515 as a whole, noting that "[t]he use of the preposition 'before' suggests an appearance in front of the agency *sitting as a tribunal*." *Id.* at 1171 (emphasis added). It considers that "the Fifth Circuit explained when addressing this same definition, 'use[ of] the preposition 'before' in connection with the term 'Federal Government agency' ... implies that an 'official proceeding' involves some formal convocation of the agency in which parties are directed to appear." *Id.* (*quoting United States v. Ramos*, 537 F.3d 439, 462–63 (5th Cir. 2008)). Additionally, the court alludes to "use of the terms 'attendance', 'testimony', 'production', and 'summon[]' when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated." *Id.* at 1172. As such, the *Ermoian* court considers "the plain meaning of the term 'proceeding,' its use in the grammatical context of the official proceeding' definition, and the broader statutory context" to hold that a criminal

investigation is not an "official proceeding" under § 1512(c). *Id.*

When one considers § 1512 as a whole, it is clear the statute solely prohibits conduct at hearings that affect the administration of justice. *See* 18 U.S.C. § 1512. The statute repeatedly references "proceedings" in the context of investigations and legal proceedings related to a criminal investigation. *Id.* Even the title of the offense relates to "Tampering with a witness, victim, or an informant." *Id.* There is little doubt, based on the language of the statute, that the "official proceeding"—and more specifically, the "proceeding before Congress" — that was allegedly obstructed by Mr. Morgan must relate to a Congressional hearing affecting the administration of justice.

This is consistent with the case law that has clarified the meaning of the statutory language at issue here. *See e.g. Arthur Andersen LLP*, 544 U.S. at 708 (Interpreting § 1512(c) as requiring that the defendant have "knowledge that his actions are likely to affect [a] *judicial proceeding*" in order to have the "requisite intent to obstruct"); *United States v. Burge*, 711 F.3d 803, 809 (7th Cir.) (Considering application of § 1512 and noting "[o]bstruction of justice occurs when a defendant acts to impede the types of proceedings that take place *before judges or grand juries*"), *cert. denied*, 571 U.S. 888 (2013); *United States v. Sampson*, 898 F.3d 287, 300 (2nd Cir. 2018) (Noting § 1512 "broadly criminalizes various forms of witness tampering").

Limiting "official proceedings" to judicial and quasi-judicial proceedings is further consistent with the structure of the statutory scheme. §§ 1512 and 1515 are found in Chapter 73 of Title 18 of the United States Code. Each one of the statutes contained in Chapter 73 proscribe obstructive conduct for very specific subjects and settings related to the administration of justice. For instance, § 1510 deals with obstruction of criminal investigations. §§ 1516 through 1518 criminalizes obstruction of specific types of other investigations. *See* 18 U.S.C. §§ 1516

(Obstruction of a federal audit); 1517 (Obstruction of examination of financial institution); 1518 (Obstruction of investigations of health care offenses). § 1519 prohibits the destruction, alteration, or falsification of records during a federal investigation.

Other provisions in Chapter 73 also explicitly relate to the administration of justice. *See* 18 U.S.C. §§ 1503, 1504 (Influencing or injuring a juror); 1513 (Retaliating against a witness, victim, or informant); 1521 (Retaliating against a federal judge or law enforcement officer by false claim or slander of title). There is even a statute to prohibit "picketing or parading" near the residence of a judge, juror, witness, or court officer "with the intent of interfering with, obstruction, or impeding *the administration of justice*." 18 U.S.C. § 1507 (emphasis added). As all these laws are related to the obstruction of the administration of justice and serve to protect participants in the administration of justice, it follows that, to violate § 1512(c), there must be some allegation that the "official proceeding" allegedly obstructed, in fact, related to the administration of justice.

This Court may also consider the legislative intent behind § 1512(c) to know what was meant by "official proceeding" as used in that statute. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms."). § 1512(c) was passed as part of the Sarbanes-Oxley Act of 2002, "An Act to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to securities laws, and for other purposes." Sarbanes–Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745. The Senate Judiciary Committee report described the Act's purpose as "provid[ing] for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in *certain Federal investigations*." S. REP. NO. 107-146, at 2

(2002) (emphasis added). As for the use of the term "official proceeding" in § 1512(c), because the legislation was due in part to the collapse of Enron, the Committee Report noted that much of Enron's document destruction was "undertaken in anticipation of a SEC subpoena to Andersen for its auditing and consulting work related to Enron." *Id.* at 4. Congress was adamant that "[w]hen a person destroys evidence with the intent of obstructing any type of investigation and the matter is within the jurisdiction of a federal agency, overly technical legal distinctions should neither hinder nor prevent prosecution and punishment." *Id.* at 6–7. In short, when considering the Act's preamble and the legislative history, it is clear that § 1512(c) was aimed at preventing corporations from destroying records relevant to a federal hearing related to the administration of justice and was not intended to apply in all circumstances where any government function may have been impeded.

The foregoing interpretation of § 1512(c) is consistent with the Department of Justice's own interpretation when discussing the application of § 1512:

> Section 1512 of Title 18 constitutes a broad prohibition against tampering with a witness, victim or informant. *It proscribes conduct intended to illegitimately affect the presentation of evidence in Federal proceedings or the communication of information to Federal law enforcement officers.*

Dep't Just., Criminal Resource Manual.

Finally, even if this Court accepts a broader reading of the term generally speaking, "official proceeding," as explained above, must relate to something more than a pro forma or ministerial ceremony. *See generally Ermoian*, 752 F.3d 1165. In order to obstruct an "official proceeding," it must have been the type for which different outcomes could result. For example, the typical § 1512(c) case involves the destruction of evidence, which could impact the outcome of a federal prosecution. The Certification of the Electoral College is not such a proceeding, and in fact that fiction is precisely the argument that was levelled by then-President Trump and resisted by then-Vice President Mike Pence. *See* Mike Pence (@Mike Pence), Twitter (Jan. 26,

2021, 11:02 a.m.), https://twitter.com/Mike_Pence/status/1346879811151605762. The Twelfth Amendment to the U.S. Constitution explains that after electors have met and cast their votes, the "President of the Senate shall, in the presence of the Senate and the House of Representatives, open all the certificates and the votes shall then be counted[.]" Section 15 of Title 3 of the United States Code provides the details of this certification, including the opportunity for the Vice President to call for "objections." The theory that the Vice President or any objectors could actually use this count as an opportunity to overturn an election is radical, and one which has been rejected by the vast majority of mainstream legal experts.[2] Because the Certification is simply a pro forma or ministerial "proceeding," it cannot constitute an "official proceeding" under § 1512.

Therefore, the Court should find that Count One fails to state an offense, because it does not allege an "official proceeding" under § 1512. *See* FED. R. CRIM. P. 12(b)(3)(B); *Ermoian*, 752 F.3d 1165.

### C. Corruptly is Unconstitutionally Vague

The Court should dismiss the Indictment for a third and related reason, namely that § 1512(c)(2) fails to provide constitutionally required notice of what it prohibits, as applied to Congressional proceedings, because what it means to otherwise obstruct, influence, or impede such a proceeding 'corruptly' is vague.

To comply with the requirements of due process, a statute must give fair warning of the prohibited conduct. *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964). A statute is unconstitutionally vague under the due process clause if "it fails to give ordinary people

---

[2] For discussion *see* Libby Cathey, *What is the Electoral Count Act and why does it present problems*, ABC NEWS (Jan. 31, 2022), available at: https://abcnews.go.com/Politics/electoral-count-act-present-problems/story?id=82396332.

fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595–96 (2015); *see also Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983)) ("[A] penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which 'policemen, prosecutors, and juries ... pursue their personal predilections.'"); *Connally v. General Construction Company*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law."). The allegations against Mr. Morgan in Count One of the Indictment fail in both respects.

In *United States v. Poindexter,* 951 F.2d 369 (D.C. Cir. 1991) the Court of Appeals for this Circuit ruled that the word "corruptly" is prone to causing vagueness, in a case concerning Section 1505, which criminalizes

> [w]hoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress –

The court wrote that the word "corruptly" in the text "must have some meaning, because otherwise the statute would criminalize all attempts to 'influence' congressional [proceedings] – an absurd result that Congress could not have intended in enacting the statute." *Poindexter*, 951 F.2d at 377 (analyzing application of § 1505 as applied to making false statements to Congress).

The court also found that dictionary alone did not make clear what that meaning is. First, there are several dictionary definitions:

> "[C]orruptly" is the adverbial form of the adjective"corrupt," which means "depraved, evil: perverted into a state of moral weakness or wickedness . . . of debased political morality; characterized by bribery, the selling of political favors, or other improper political or legal transactions or arrangements." A "corrupt" intent may also be defined as "the intent to obtain an improper advantagefor [one]self or someone else, inconsistent with official duty and the rights of others."

*Id.* at 378 (quoting *United States v. North*, 910 F. 2d 843, 881-82, *reh'g granted in part*, 920 F.2d 940 (D.C.Cir.1990), *cert. denied*, 500 U.S. 941 (1991) (D.C. Cir. 1990)). Poindexter argued that "so defined, 'corruptly' is vague as used in [§] 1505." *Id.* at 1378. Mr. Morgan argues that, so defined, "corruptly" as used in § 1512 isas well.

The Court of Appeals acknowledged, and this Court must as well, that "on its face, the word 'corruptly' is vague; that is, in the absence of some narrowing gloss, people must 'guess at its meaning and differ as to its application.'" *Id.* at 378. And, just as the court found that "corruptly influencing" a congressional inquiry "does notat all clearly encompass lying to Congress, which is, by way of contrast, clearly a violation of § 1001," *id.*, this Court must acknowledge that the conduct alleged in theinstant Indictment – which also would clearly violate another statute (40 U.S.C. § 5104) – does not clearly fall within "corruptly . . . otherwise obstructing, influencing,or impeding" an official proceeding, using the dictionary definitions of "corruptly." That is because "[t]he various dictionary definitions of the adjective 'corrupt'" are themselves vague. *Id.* "Words like 'depraved,' 'evil,' 'immoral,' 'wicked,' and 'improper' are no more specific – indeed they may be less specific – than 'corrupt.'" *Id.* at 378-79. Because of this, the Court of Appeals for this Circuit found the word "corruptly" as used in § 1505 "too vague to provide constitutionally adequate notice that it prohibits lying to the Congress." *Id.* at 379.

Applying the logic of *Poindexter*, the only way the use of the word in § 1512 can avoid the same fate is if the text or other context "clearly indicates a more specific meaning of the term 'corruptly,'" and Mr. Morgan's "conduct comes within that meaning." *Id.* at 379 (considering whether the use of the word, the legislative history of 1505, or judicial gloss on the statute provided a clear indication of a more specific meaning of the word in that statute, and ultimately concluding that it did not).

In *Poindexter*, the court first considered whether the usage of the word "corruptly" gave it more definition. *Id.* at 379. The court noted that

> the verb "corrupt" may be used transitively ("A corrupts B," i.e., "A causes B to act corruptly") or intransitively ("A corrupts," i.e., "A becomes corrupt, depraved, impure, etc."). So too, the adverbial form "corruptly" may have either the transitive or the intransitive sense. *See* 3 OxfordEnglish Dictionary 974 (2d ed. 1989) ("corruptly" may mean either "by means of corruption or bribery," i.e., by means of corrupting another, or acting oneself "in a corrupt or depraved manner").

*Id.* at 379. But the court found that this analysis did not evade the vagueness in the word itself because

> either a transitive or an intransitive interpretation would still be unconstitutionally vague . . . if specific content is not given to the word 'corruptly.' Reading 'corruptly' to prohibit one from influencing another to act 'immorally' or 'improperly' provides no more guidance than does reading it to prohibit one from acting 'immorally' or 'improperly' oneself.

*Id.*

The same issue is presented here: No matter how "corruptly" is used in § 1512(c)(2) – transitively or intransitively – the word lacks definition and remains too vague to provide constitutionally-required notice. Alternatively, but for similar reasons, the Court should find that any ambiguity about whether the alleged conduct falls under § 1512(c), merits lenity in this case. *See Cook*, 594 F.3d at 890.

### III.    CONCLUSION

Based upon the foregoing, this Court is respectfully asked to dismiss Count One of the Indictment, as its reliance on 18 U.S.C. § 1512(c) represents an inappropriate vehicle on which to prosecute the alleged conduct.

Respectfully Submitted,

Maureen Scott Franco
Federal Public Defender


/S/
JOHN P. CALHOUN
Assistant Federal Public Defender
Western District of Texas
Richard C. White Federal Building
700 E. San Antonio, D-401
El Paso, Texas  79901
(915) 534-6525
*Attorney for Defendant*


### CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of April, 2022, I electronically filed the foregoing with the Clerk of Courts using the CM/ECF system, and sent notification of such filing to the following:

James Dennis Peterson
DOJ-CRM
1331 F. Street
6th Floor
Washington, D.C. 20530

/S/
JOHN P. CALHOUN
*Attorney for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **V.** | § | **NO. 1:21-CR-0313-TJK-01** |
| | § | |
| | § | |
| **ANDREW JACKSON MORGAN, JR.** | § | |
| | § | |

## ORDER

On this day, the Court considered Defendant's Motion to Dismiss, and the Court is of the

opinion that the motion should be GRANTED. Accordingly, it is hereby:

ORDERED that Count One of Indictment in this cause is DISMISSED.

SIGNED this ____ day of _____, 20__.


_____
TIMOTHY J. KELLY
UNITED STATES DISTRICT JUDGE